[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-14772

_____

D.C. Docket No. 5:15-cv-00475-MTT

GARTH ANDERSON,
individually and on behalf of all those similarly situated,

Plaintiff - Appellant.

versus

AMERICAN FAMILY INSURANCE COMPANY,

Defendant – Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(February 4, 2020)

Before ANDERSON and MARCUS, Circuit Judges, and EBEL,* Circuit Judge.

PER CURIAM:

---

* Honorable David M. Ebel, United States Circuit Judge for the Tenth Circuit, sitting
by designation.

This is an appeal of the latest of a series of putative class actions filed against home insurers in Georgia.  Here, however, the district court did not decide the plaintiff Garth Anderson's motion for class certification, and instead granted the defendant American Family Insurance Company's ("AFIC") motion for summary judgment, concluding that the plaintiff failed to adduce sufficient evidence showing that he suffered the alleged injuries.

We have had the benefit of oral argument, and have carefully reviewed the opinion of the district court below, as well as the briefs of the parties and relevant parts of the record.  Because we write only for the benefit of the parties, who are already familiar with the facts, we mention only such facts as are necessary to understand our reasoning.

## A.

The first issue is whether Anderson has introduced evidence demonstrating that his property suffered from diminished value due to stigma that is sufficient to survive AFIC's summary judgment motion.  After a thorough review of the record, it is clear that Anderson has not adduced such evidence.

Anderson states that his expert, Dr. Kilpatrick, appraised his property and conducted a diminished value analysis.  He submits both a report and a rebuttal ostensibly supporting this conclusion.  Ultimately, we cannot conclude that the

report and rebuttal sufficiently demonstrate that Anderson's property suffered from diminished value due to stigma.

The only places in the pair of reports in which Dr. Kilpatrick states that he studied Anderson's property for diminished value due to stigma are ¶¶ 13 and 87 of the Rebuttal.  Paragraph 13 states that "I did appraise the Anderson property and determine that, based on the aggregation of evidence, including my reconciliation of case studies and the market data obtained from my prior survey, the Anderson home property suffered a diminution in value of 13%."  Dr. Kilpatrick makes a similar statement at ¶ 87: "Based on my expertise and experience in the appraisal field and having appraised impaired properties for over 30 years, I concluded to a reasonable degree of appraisal certainty that the Anderson property sustained a diminution in value of approximately 13% as a result of its water loss event at issue."

Such statements standing alone are mere conclusions.  Dr. Kilpatrick needs to introduce some basis for making these statements about Anderson's property.  But the expert report and rebuttal make clear that the opinion expressed in ¶¶ 13 and 87 is based entirely on the effect that similar casualty losses have had on other properties.  Dr. Kilpatrick notes that his 13% diminished value conclusion is "based on the aggregation of evidence," including "reconciliation of case studies" and "my prior survey."  ¶ 13.  He states that he has "reviewed the relevant

3

literature for effects of [analogous] adverse events" and "analyzed case studies involving similar adverse events." ¶ 87. Dr. Kilpatrick "also reviewed a prior contingent value survey and Respondent[']s opinions," and based his conclusion on his "expertise and experience in the appraisal field." ¶ 87.

Dr. Kilpatrick only visited Anderson's property once—on January 24, 2017—and only for the purpose of evaluating its valuation <u>before</u> the water damage. He did not enter the house, and did not assess the success or lack thereof that the post-water damage repairs and renovations had on eliminating any stigma resulting from the loss. Dr. Kilpatrick made it quite clear in his deposition that he was "valuing the property as if unimpaired" and was attempting to obtain an estimate of the house's fair market value pre-water damage. Thus, Dr. Kilpatrick's proffered conclusions regarding the 13% impairment in value due to stigma are not derived from his analysis of the property itself, but from the effect that similar losses had on different properties.

Paragraph 236 of Dr. Kilpatrick's report itself acknowledges that the methodologies described above can only demonstrate the "potential" of a given property to endure diminished value due to stigma. His report states that the "<u>only</u> way to determine whether a property has suffered diminution in value, and the extent of the value diminution, if any, to each property, is to assess the properties in the before (prior to water damage) and after (post repair to the water damage)

4

conditions in accordance with generally accepted appraisal standards . . . ." ¶ 236 (emphasis added). Nowhere does Dr. Kilpatrick state with sufficient detail or explanation that he conducted this requisite analysis.

Dr. Kilpatrick's conclusory statements in ¶¶ 13 and 87 that he actually conducted a diminished value analysis are belied by his admission that he only evaluated the Anderson property once—a pre-water damage valuation appraisal— and the absence in either of his submissions of any statement claiming that he conducted a post-water damage valuation appraisal, which he admits in ¶ 236 is the only way to determine diminution in value. We therefore agree with the district court's statement that Dr. Kilpatrick's submissions do not contain "any analysis or discussion suggesting that he even attempted to assess Anderson's home in its immediate post-repair condition."

Dr. Kilpatrick states multiple times that an analysis of diminished value on account of stigma affecting other properties, as well as a review of the relevant literature, can only demonstrate the potential of diminished value. And according to Dr. Kilpatrick's own testimony – which significantly is the only evidence in the record which might support a diminished value because of stigma – to show that a specific property actually did suffer diminished value, an expert must perform a diminished value appraisal—i.e., assess the property before the water damage and then after. Dr. Kilpatrick does not say anywhere that he performed such an

5

appraisal.  We therefore cannot conclude that Dr. Kilpatrick's report and rebuttal provide sufficient evidence to create a genuine issue of fact that Anderson's property suffered diminished value on account of stigma.  Rather, Dr. Kilpatrick's opinion that Anderson's house experienced a 13% diminished value due to stigma is offered only at the highest level of abstraction, and is wholly conclusory and without support in the record evidence.

On the other hand, there is strong evidence in the record indicating that Anderson's property suffered <u>no</u> diminished value:

- Anderson hired an expert who worked with AFIC's claims adjuster, thus ensuring that every possible needed repair was made and paid for;

- Sale of the property occurred only 18 months after the renovations were completed, and less than 30 days after it was put on the market;

- The water damage was reflected in the seller disclosure forms, and there is no indication that this fact depressed the eventual sales price;

- No potential buyers expressed concern about the water damage

- Anderson's realtor touted the repairs as <u>increasing</u> the property's value;

- The ultimate buyer's inspection of the house listed other problems, but not the prior water damage; and

- The property's sales price reflected appreciation of 45% within four years.

6

In light of the foregoing factors,[1] we cannot say that a reasonable jury could find on this summary judgment evidence that Anderson's property suffered diminished value due to stigma.  In other words, Anderson has failed to adduce sufficient evidence to support such a finding.[2]

B.

The second issue in this appeal is Anderson's failure to assess claim.  The district court concluded that because AFIC was able to establish as a matter of law that the insured's home did not decrease in value because of stigma, there was no need for an assessment.  The point of an assessment is to determine whether stigma exists.  If there is no stigma, assessing the property at issue is futile, and the question of whether Anderson is entitled to an assessment is essentially moot.

Anderson directs the Court to both State Farm Mutual Automobile Ins. Co. v. Mabry, 556 So.2d 114 (G.A. 2001), and Thompson v. State Farm Fire &

---

[1] To the extent that Dr. Kilpatrick's 13% diminished value figure was derived, as claimed in Anderson's reply brief, from his case studies, his contingent value survey, and his reconciliation of peer-reviewed literature, it is insufficient for the reasons set forth above in the text. To the extent the 13% figure was derived from Dr. Kilpatrick's prediction of what the house should have sold for in August 2016, Dr. Kilpatrick admitted that he failed to consider a "confidence interval" or margin of error, and therefore his prediction was flawed.  His prediction was also flawed because there is no evidence that he considered the other record evidence suggesting that the actual sales price in August 2016, might have been reduced for reasons unrelated to stigma – e.g., Anderson's desire for a quick sale.

[2] Our decision in this regard is based only on the evidence, or lack thereof, in this summary judgment record. We offer no opinion as to appropriate methods that might be available to prove diminished value on account of stigma.

7

Casualty Co., 264 F. Supp. 3d 1302 (M.D. Ga. 2017), arguing that each case demonstrates that a failure to assess claim is distinct from a failure to pay claim. But neither case arose in a posture similar to this case, in which it is clear that there was no diminished value on account of stigma.  The parties dispute whether Mabry expressly conditions the duty to assess on the plaintiff's demonstration of the potentiality of such diminished value.  We do not decide that issue today, but it is clear that when the Georgia Supreme Court permitted the injunction in that case, there was still such potentiality for stigma.  Therefore, Mabry is silent on the issue of whether a court can or should order an insurance company to assess for diminished value in a context in which it is clear that there is no diminished value.

Similarly, Thompson does not address whether a failure to assess claim could survive when it is clear that there is no successful failure to pay claim.  To the contrary, the district court expressly concluded that there were issues of fact as to the plaintiffs' failure to pay claim.  264 F. Supp. 3d at 1316-19.  It is true that some language in Thompson appears to facially support Anderson's position.  For example, the court states that "[w]hether the Thompsons have or have not suffered diminished value is simply irrelevant to their standing to bring a claim for State Farm's failure to assess for a diminished value." Id. at 1316-17.  But it is clear from context that the court in Thompson was merely explaining the flaws in State Farm's contention that Thompson was required to prove diminished value in order

8

to receive an injunction requiring State Farm to assess its property—a contention that the court in <u>Thompson</u> stated "turns <u>Mabry</u> on its head." <u>Id.</u> at 1317. <u>Thompson</u> was not making, and could not have made, a statement regarding the situation presented here: whether a failure to assess claim could succeed when it is clear as a matter of law that such an assessment would reveal no stigma.

We thus hold that, when a plaintiff raises a failure to assess claim and a failure to pay claim alleging diminished value on account of stigma, and a defendant succeeds on a motion for summary judgment with respect to the failure to pay claim by demonstrating that the plaintiff's property has not suffered diminished value, it would be futile to assess the property and the failure to assess claim is essentially moot.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.